RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 4/23/07
6A

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| FRANCIS BLADEN, ET AL. | CIVIL ACTION NO. 06-0973 |
| VERSUS | JUDGE DOHERTY |
| C.B. FLEET HOLDING COMPANY, ET AL. | MAGISTRATE JUDGE HILL |

### MEMORANDUM RULING ON MOTION TO DISMISS

Pending before the Court is a Motion to Dismiss [Doc. 2] under Fed. R. Civ. P. 12(b)(6) filed by the defendants, C.B. Fleet Holding Co. and C.B. Fleet Company, Inc. (collectively, "Fleet"). Fleet seeks dismissal of Counts II (Enrichment without Cause pursuant to La. C.C. Art. 2298), III (Violation of Louisiana Unfair Trade Practices Act (LUTPA) pursuant to La. R.S. 51:4101, *et seq.*),[1] and IV (Fraud and Deceit) of the plaintiffs' Complaint. Specifically, Fleet argues plaintiffs, Francis Bladen and Kate Bladen (collectively, "plaintiffs"), are precluded from bringing Counts II, III, and IV because the Louisiana Products Liability Act (LPLA) provides the exclusive remedy for plaintiffs' complaints.

In response, plaintiffs filed an Opposition to Motion to Dismiss [Doc. 9], in which they agree to voluntarily dismiss counts II (Enrichment without Cause) and IV (Fraud and Deceit) of their complaint; however, plaintiffs oppose the dismissal of Count III (LUTPA violation). Plaintiffs acknowledge the LPLA provides exclusive theories of liability; however, they argue their LUTPA

---

[1] This Court notes La. R.S. 51:1401 provides, "This Chapter shall be known and may be cited as the 'Unfair Trade Practices and Consumer Protection Law'" and that some cases refer to the Act as "LUTCPL." *See, e.g., Mayer v. Lamarque Ford, Inc.*, 2001 WL 175232 (E.D.La. 2/16/2001) (unpub.). However, through convention, courts often refer to the Act as "LUTPA," which is used herein for the purpose of discussion. *See, e.g., Levine v. First Nat. Bank of Commerce*, 948 So.2d 1051, 2006 WL 3691687 (La. 12/15/2006).

allegations are not barred by the LPLA's exclusive theories of recovery provision.

As plaintiffs have no opposition to Fleet's Motion to Dismiss Counts II and IV of plaintiffs' petition and the Court sees no error in law, the Court GRANTS Fleet's Motion to Dismiss as to those counts. For the reasons that follow, Fleet's Motion to Dismiss Count III of plaintiffs' petition pursuant to Rule 12(b)(6) is also GRANTED.

## FACTS

In their June 9, 2006 petition, Plaintiffs, Francis and Kate Bladen, allege that on or about January 20, 2004, Mr. Francis was given a 1.5 ounce unflavored package of "C.B. Fleet Phospho-soda" (the "product") at the Veteran's Administration Medical Center in Alexandria, Louisiana, where he was scheduled to undergo a sigmoidoscopy procedure on January 21, 2004. The product allegedly contained "no product insert" and there were "no warnings regarding kidney damage, kidney or renal failure, or risk to persons" in Mr. Bladen's age group. At some point after the January 21, 2004 procedure, Mr. Bladen's laboratory results revealed "elevated creatine levels," and he was referred by his treating physician to a nephrologist, who, in July 2004, diagnosed Mr .Bladen with "acute renal failure." Plaintiffs contend Mr. Bladen was a "relatively fit and health[y] man" prior to his use of the product, but has now sustained permanent damage, including renal impairment, following his ingestion of the product. (Complaint ¶¶ VIII-XVI).

Plaintiffs allege in Count I of their petition that Fleet is liable to plaintiffs under the LPLA as a "manufacturer/seller" of the product. Plaintiffs allege the product is unreasonably dangerous in construction and composition and also unreasonably dangerous in design. Plaintiffs further allege the product is unreasonably dangerous because an adequate warning about the product was not provided. Specifically, plaintiffs allege Fleet: (1) did not adequately reflect the symptoms, scope or

severity of the possible adverse side effects of the product; (2) did not perform adequate testing that would have demonstrated the product's harmful side effects; (3) continued to market the product despite the fact Fleet knew its product caused unreasonable, dangerous side effects; (4) failed to include proper warnings regarding all possible adverse side effects; (5) "remained silent" despite its knowledge of public acceptance to Fleet's "information, misrepresentations, and omissions" regarding the safety of the product and "did so because the prospect of profits outweighed health and safety of 'consumers,'" including Mr. Bladen; (6) recklessly, falsely and deceptively misrepresented or knowingly omitted, suppressed or concealed material facts regarding the safety of the product from the "FDA," which would never have approved the product "for sale to consumers and no physician would have been able to prescribe" the product; and (7) failed to comply with its post-manufacturing duty to warn when Fleet knew that the product was being "prescribed without warning of the true risks of side effects." Plaintiffs also contend the product is unreasonably dangerous because it does not conform to Fleet's implied and express warranties about the product when Fleet knew of the product's intended use. (Complaint ¶¶ XVII-XXXVI).

In Count III of plaintiffs' petition, plaintiffs aver Fleet is liable to them under LUTPA. Without identifying any specific dates on which any alleged unfair deceptive trade practices occurred, plaintiffs allege Fleet violated LUTPA by: (1) failing to disclose material information concerning the product, which information was known to Fleet at the time of sale of the product; (2) failing to disclose to the public Fleet's knowledge of the potential adverse side effects; (3) failing to disclose to government authorities and to the public important scientific information regarding the product; (4) failing to disclose to the public meaningful information regarding proper hydration in connection with the use of the product; (5) failing to provide the public with complete information

concerning the potential harmful side effects of the product, including "failure to provide the same warnings Fleet provides to foreign purchasers and consumers;" (6) knowingly making "false representations as to characteristics, uses, or benefits" of the product; (7) misrepresenting the impact of the product on renal function; (8) misrepresenting the potential adverse side-effects of the product on certain age groups within Fleet's targeted market; and (9) misrepresenting the dissemination of Fleet's scientific information. According to plaintiffs, by means of the foregoing "deceptive trade practices," Fleet "unlawfully acquired money from numerous Louisiana consumers, including plaintiffs." (Complaint ¶¶ L-LV).

## LAW

### 1.  Standard of Review

The test for determining the sufficiency of a complaint under Rule 12(b)(6) was established by the United States Supreme Court: "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ramming v. U.S.*, 281 F.3d at 158, 161 (5th Cir. 12/19/2001) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In evaluating a defendant's motion to dismiss, a court is obligated to construe the plaintiff's complaint "in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." 281 F.3d at 161 (citing *Oppenheimer v. Prudential Securities, Inc.*, 94 F.3d 189, 194 (5 Cir. 1996)). The court is obligated to examine the complaint to determine whether the allegations provide relief on any possible theory. 281 F.3d at 162 (citing *Cinel v. Connick*, 15 F.3d 1338, 1341 (5 Cir. 1994)).

Although Rule 12(b)(6) is a powerful tool to use in expediting the judicial process and excising court calendars of cases in which there are no judicially cognizable claims, it is a disfavored motion and is rarely granted. *Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5 Cir. 1986) (citing *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir.1981)). Rule 12(b)(6) should not be used as a substitute for a request for a more definite pleading within the meaning of Fed.R.Civ.P. 8, nor is a Rule 12(b)(6) dismissal warranted because the district court believes the plaintiff is unlikely to prevail on the merits. *Id.* citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Even if it seems "almost a certainty to the court that the facts alleged cannot be proved to support the legal claim," the claim may not be dismissed so long as the complaint states a claim. *Id.* citing *Boudeloche v. Grow Chemical Coatings Corp.*, 728 F.2d 759, 762 (5th Cir.1984).

2. **Substantive Law**

   A. *Erie R.R. Co. v. Tompkins*, **304 U.S. 64 (1938).**

As jurisdiction in this matter is premised upon 28 U.S.C. § 1332 (diversity of citizenship), Louisiana law governs the substantive issues of law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). As such, the Court is duty bound to apply Louisiana law. The Fifth Circuit's guidance to District Courts in this endeavor is as follows:

> To determine state law, federal courts sitting in diversity look to the final decisions of the state's highest court. In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case. . . .
>
> [The court must] employ the appropriate Louisiana civilian methodology to decide the issues presented the way that [the court] believe[s] the Supreme Court of Louisiana would decide them. Under Louisiana's Civil Code, the only authoritative sources of law are legislation and custom. Thus, in Louisiana, courts must look first and foremost to the state's primary sources of law: the state's constitution, codes,

and statutes. As we have previously recognized, the primary basis of law for a civilian is legislation, and not (as in the common law) a great body of tradition in the form of prior decisions of the courts. Indeed, *stare decisis* is foreign to the Civil Law, including Louisiana. Jurisprudence, even when so cohesive and entrenched as to rise to the level of *jurisprudence constante* is merely a secondary law source. Therefore, while it is true that we will not disregard Louisiana appellate court decisions unless we are convinced by other persuasive data that the highest court of the state would decide otherwise, particularly if numerous decisions are in accord on a given issue - the so-called *jurisprudence constante* - we are not strictly bound by them.

*American International Speciality Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) (internal citations and quotations omitted).

### B. The Statutory Declaration of Exclusive Liability under the LPLA

The LPLA, which was enacted in 1988, contains the express declaration that a "claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter." La. R. S. 9:2800.52. Pursuant to the LPLA:

> The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.

La. R. S. 9:2800.54(A). The LPLA provides that a product is unreasonably dangerous "if and only if:" (1) the product is unreasonably dangerous in construction or composition; (2) the product is unreasonably dangerous in design; (3) the product is unreasonably dangerous because an adequate warning about the product has not been provided; or (4) the product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product. La. R. S. 9:2800.54(B).

Additionally, the LPLA defines a "manufacturer" as: (1) a person who labels a product as his own or otherwise holds himself out to be the manufacturer of the product; (2) a seller who

exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage; (3) one who incorporates into the product a component part or part manufactured by another manufacturer; and (4) a seller in the business of importing or distributing a product for resale and is the alter ego of a foreign manufacturer. La. R.S. 9:2800.53(1)(a)-(d).

The LPLA defines "damage" as "all damage caused by a product, including survival and wrongful death damages, for which Civil Code Articles 2315, 2315.1 and 2315.2 allow recovery." La. R.S. 9:2800.53(5). "Damage" under the LPLA "includes damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that Chapter 9 of Title VII of Book III of the Civil Code entitled 'Redhibition' does not allow recovery for such damage or economic loss." *Id.* Additionally, the LPLA definition of "damage" explicitly provides, "Attorneys' fees are not recoverable under this Chapter." *Id.*

C.  **LUTPA**

In 1972, approximately sixteen years prior to the enactment of the LPLA, the Louisiana legislature passed Act 759, which embodied the Unfair Trade Practices and Consumer Protection Law, R.S. 51:1401-1418, in response to widespread consumer dissatisfaction with their treatment in the marketplace. *State ex rel. Guste v. General Motors Corp.*, 370 So.2d 477, 484-487 (La. 9/05/1978). The act provides for a private cause of action by permitting any person who suffers ascertainable loss from a deceptive or unfair practice to bring an action for the recovery of actual damages. *Id.* Pursuant to LUTPA, the private cause of action is subject to a one-year peremptive period.[2] *Spencer-Wallington v. Service Merchandise*, 562 So.2d 1060, 1063 (La. App. 1 Cir.1990);

---

[2] Notably, peremption is not subject to suspension, interruption, or renunciation. The doctrine of *contra non valentum*, which suspends the running of prescription where the cause of action is not known or reasonably knowable by the plaintiff, is inapplicable to a peremptive period. *Tubos de Acero, supra,*

*Canal Marine Supply, Inc. v. Outboard Marine Corp.*, 522 So.2d 120, 12031 (La. App. 4 Cir.1988); *Keubler v. Martin*, 610 So.2d 270, 271 (La. App. 5th Cir.1992; *Tubos de Acero de Mexico, S.A. v. American Intern. Inv. Corp., Inc.*, 292 F.3d 471, 481 (5th Cir. 2002).

LUTPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." This legislation is broadly and subjectively stated and does not specify particular violations. Rather, what constitutes an unfair trade practice is determined by the courts on a case-by-case basis. "[A] practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious." *Levine v. First Nat. Bank of Commerce*, 948 So.2d 1051, 1065-1066, (La. 12/15/2006) (internal citations omitted). To prevail upon a LUTPA complaint, a plaintiff must prove "some element of fraud, misrepresentation, deception or other unethical conduct." *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir.1994).

## DISCUSSION

The sole issue presented for this Court's consideration is whether the LPLA precludes plaintiffs' LUTPA claims on the facts presented in this matter. Notwithstanding this Court is bound by *Erie, supra*, it is noted the parties give scant attention to the two statutes at issue and have presented no Louisiana State Supreme Court jurisprudence on point. In fact, a review of Fleet's motion to dismiss reveals reliance upon published and unpublished United States District Court opinions in addition to several United States Fifth Circuit matters in which LUTPA claims were not directly before the courts in the context of LPLA claims, as will be discussed below. Likewise, a

---

292 F.3d at 481 *(citing Louisiana v. McInnis Bros. Constr.*, 701 So.2d 937, 939-940 (La.1997)).

review of plaintiffs' opposition primarily reveals Louisiana state appellate court jurisprudence in which LUTPA claims were not directly before the courts in the context of LPLA claims, which also will be discussed below. However, based upon this Court's own research, it is noted that, upon a review of the jurisprudence involving LPLA and LUTPA, there is an apparent paucity of Louisiana State Supreme Court jurisprudence on point.[3]

This Court is nonetheless *Erie*-bound, and thus must look to the statutes themselves and thereafter, will take the unusual approach of addressing Louisiana Appellate cases, not directly on point as well as the unpublished and published opinions cited by Fleet, and directly relied upon by the parties, in reaching a conclusion plaintiffs's LUTPA complaints must be dismissed pursuant to Rule 12(b)(6). Specifically, this Court considers: (1) the LPLA and LUTPA statutes first and foremost; and (2) the jurisprudence argued by the parties; i.e., jurisprudence addressing claims "outside the scope" of the LPLA and jurisprudence addressing "additional theories of recovery" and the LPLA.

1.      **The LPLA and LUTPA Statutes**

Prefatorily, it is noted that the following are undisputed: (1) the LPLA applies to this matter;

---

[3] At least one commentator has noted the following:

> While numerous opinions considering possible LUTPA causes of action indicate that the legislature left determination of what constitutes an unfair trade practice up to the courts, the Louisiana Supreme Court has done little to clarify judicial interpretation of LUTPA. In fact, on the subject of the disagreement over how LUTPA applies in conjunction with other causes of action, the Louisiana Supreme Court denied a writ of certiorari in a case after a circuit judge in his dissent pleaded to the Supreme Court to grant the writ and resolve the disagreement.

Keith E. Andrews, Louisiana Unfair Trade Practices Act: Broad Language and Generous Remedies Supplemented by a Confusing Body of Case Law, 41 LYLR 759, 769-773 (1996) (citing *Bryant v. Sears Consumer Fin. Corp.*, 617 So.2d 1191, 1197-1198 (La. App. 3d Cir. 1991)).

(2) Fleet is "manufacturer"under the LPLA; (3) Fleet's product is alleged by plaintiffs to be a "defective product" under the LPLA; and (3) plaintiffs allege Fleet is liable to plaintiffs under the LPLA for damage proximately caused by a characteristic of Fleet's product that plaintiffs allege rendered the product unreasonably dangerous when such damage arose from Mr. Bladen's reasonably anticipated use of the product.

At no point in plaintiffs' LUTPA allegations, which are accepted as true and considered in the light most favorable to plaintiffs for the purposes of Rule 12(b)(6), is there any indication or allegation that Fleet is not a "manufacturer" under the LPLA. This Court observes Plaintiffs describe Fleet as a ""manufacturer/seller" of the product, but also observes a "manufacturer" under the LPLA includes a "seller" who "exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage." There is no dispute Fleet not only manufactured the product, but also, sold the product over which it exercised control and influenced characteristics of the design, construction or quality of the product that allegedly caused plaintiffs' damage. Accordingly, a review of the LPLA establishes, on the basis of the undisputed facts that for these purposes only, Fleet will be held to be a "manufacturer" under the LPLA. Accordingly, given the undisputed facts, as set forth in plaintiffs' petition, and accepted by the Court for these purposes, this Court will assume for these purposes only, application of the LPLA to the claims now before the Court.

Plaintiffs allege, however, Fleet, also, is liable under LUTPA *in addition to* its potential liability under LPLA alleging Fleet's conduct and actions in selling the product; however, plaintiffs provide no statutory authority on which this Court can rely to conclude such liability exists *in addition to* the liability authorized under the LPLA and in view of the exclusivity provision found

within the LPLA. The LPLA clearly and explicitly contains a statutory declaration of exclusive liability for manufacturers falling only under the LPLA. The LPLA was passed, with its exclusivity provisions, some sixteen years after the passage of the LUTPA. Thus, this Court will assume the Louisiana legislature was aware of the LUTPA when the declaration was made limiting claims against manufacturers for damage caused by their products to the LPLA, and notes no exception was created for the LUTPA as to claims against manufacturers for damage caused by their products, albeit through alleged unfair trade practices. Legislative language has been consistently interpreted by the Louisiana courts with the assumption the legislature, when passing legislation is aware of existing statutes, rules of construction, and judicial decisions interpreting those statutes. It has further been presumed by the Courts, that the legislative branch intends to achieve a consistent body of law. *State v. Campbell*, 877 So.2d 112, 117 (La.7/6/04). Thus, this Court will assume the Louisiana Legislature was aware of LUTPA when it enacted the LPLA with its limitations, some sixteen years after the enactment of LUTPA.

The legislature, with full knowledge of the LUTPA, unquestionably enacted the LPLA statutory declaration of exclusive liability in the LPLA and made no exception for the LUTPA. However, a review of the LPLA reveals express reference to other areas of Louisiana Law, exempted or referred, namely the Louisiana law of "redhibition," but reveals no such reference to LUTPA, nor any reservation of rights for claimants against manufacturers under the LPLA for damages related to LUTPA violations. It is further presumed by the Courts, the legislature, in the enactment of the LPLA, intended to achieve a consistent body of law. See *Campbell*, supra. The plain language and the unique legislative history of the LPLA demonstrate the legislature's intent to make the LPLA the

sole vehicle for a suit against a "manufacturer."[4]

Consequently, pursuant to *Erie*, this Court carefully considered the two statutes at issue, the LPLA and LUTPA, and finds no statutory support for a conclusion the LPLA's statutory declaration of exclusive liability should be abrogated on these facts in favor of an additional claim made pursuant to the LUTPA, particularly when, as in this case, the alleged injury arises out of the use of a product by a consumer, manufactured by a defendant – the factual scenario specifically contemplated by the LPLA.[5]

2.  **Claims "Outside the Scope" of the LPLA**

The courts have commonly found actions are precluded by the statutory declaration of exclusive liability under the LPLA; however, as noted, the applicability of that exclusivity provision

---

[4] According to one commentator, the LPLA was enacted in response to a Louisiana Supreme Court decision rendered in *Halphen v. Johns-Manville Sales Corp.*, 484 So.2d 110 (La. 1986). The *Halphen* decision was rendered in response to a certified question from the United States Fifth Circuit Court of Appeals, namely, "Would Louisiana law make a manufacturer liable for injuries that its products caused even though at the time the product left the manufacturer's control it neither knew nor could have known that the product was 'unreasonably dangerous'? The Louisiana State Supreme Court indicated in an "unreasonably dangerous *per se*" case, a Louisiana court could, under certain circumstances, hold a manufacturer liable for injuries caused by a product that was unreasonably dangerous at the time of trial but not at the time of manufacture. As a result of the *Halphen* decision, the Fifth Circuit held that asbestos was "unreasonably dangerous *per se*," and "the furor over *Halphen* was monumental." Thereafter, the legislature, at the behest of Governor Roemer and the Louisiana Association of Business and Industries, enacted the Louisiana Products Liability Act, which at least partially overrules *Halphen* and essentially codifies the law of products liability in Louisiana." Thomas C. Galligan, Jr., The Louisiana Products Liability Act: Making Sense of it All, 49 LALR 629, 630-631(1989) (citing *Halphen v. Johns-Manville Sales Corp.*, 788 F.2d 274, 275 (5th Cir. 1986) ('[W]e find it apparent from the citations and discussion in the certification response that the Supreme Court of Louisiana places asbestos in . . . the [unreasonably dangerous *per se*] category.'); Hearings on La. S. 684, before the Senate Committee on Judiciary A, May 17, 1988)).

[5] Assuming **arguendo** plaintiffs could state a cause of action under LUTPA on the facts presented, this Court notes this suit was filed on June 9, 2006; however, plaintiffs complain that Mr. Bladen ingested the product on January 20, 2004, well over one year prior to plaintiffs' June 9, 2006 petition in this matter. However, the issue of peremption is not before this Court, nor need be addressed by this Court, as this Court finds the LPLA bars the claims made pursuant to the LUTPA.

to LUTPA claims has not been directly addressed by the majority of those courts. For instance, in *Lacey v. Bayer Corp.*, 2002 WL 1058890 (E.D. La.) (unpub.), relied upon in the decisions argued by the parties, the *Lacey* plaintiff apparently made no claim under LUTPA. Rather, she proceeded under a theory of "strict liability," and asserted claims in "negligence, fraud, misrepresentation, negligent and reckless misrepresentation and conspiracy." In response, the defendant filed a Motion to Dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6), and the plaintiff filed <u>no</u> opposition. The Court noted the absence of any opposition and specifically found plaintiff's claims of "negligence, fraud, misrepresentation, negligent and reckless misrepresentation, conspiracy and strict liability" were outside the scope of the LPLA. *Lacey* at 1-2.

In *Avondale Industries, Inc. v. Tyco Valves and Controls*, 2003 WL 22697180 (E.D.La. 2003), the Court was faced with opposing Motions for Summary Judgment involving the alleged purchase and installation of defective valves. Avondale sued, based on the causes of action, including: (1) redhibition/implied warranty; (2) the LPLA; (3) tort; (4) breach of contract; and (5) LUTPA. Tyco responded that Avondale's claim under the LPLA precluded Avondale from bringing suit under LUTPA or tort law. Noting Avondale did not oppose dismissal of its LUTPA claims or the tort claims that it raised under Civil Code Article 2315, the Court granted Tyco's motion for summary judgment as it related to Avondale's claims in tort brought under Civil Code Article 2315 and to Avondale's claims brought under LUTPA.

In *Hopkins v. NCR Corp.*, 1994 WL 757510 (M.D.La. 11/17/1994) (unpub.), the District Court likewise did not reach the issue of the applicability of LUTPA on a Motion to Dismiss under Rule 12(b)(6). There, the District Court was not asked to consider LUTPA. Rather, the Court specifically considered the limitation of "tort" damages and "whether the language of Louisiana

Revised Statutes 9:2800.52 bars plaintiff from raising a claim pursuant to Louisiana Civil Code Article 2317." The Court ultimately found "no ambiguity" in the LPLA, and applied the statute as written, to conclude the plaintiff had no right of action under La. C.C. art. 2317 because her exclusive theories of recovery were set forth by the LPLA.

In *Grenier v. Medical Engineering Corp.*, 99 F. Supp.2d 759, 765-63 (W.D.La.2000), the Court faced a number of motions for summary judgment filed by a defendant, alleging the LPLA barred the plaintiff's allegations. Notably, the *Grenier* plaintiff originally filed a complaint alleging a number of theories, including LUTPA violations; however, she filed an amended complaint "streamlining the original complaint." As a result, the Court did not consider LUTPA violations when it determined the following claims were not cognizable under the LPLA: Strict Liability; Negligence; Breach of Warranty of Fitness for a Particular Purpose, as it relates to breach of implied warranty; Misrepresentation/Fraud; Fraud by Concealment; False Advertising; Negligent Infliction of Emotional Distress; Common Plan to Prevent Public Awareness of Breast Implant Hazards; and Fear of Future Product Failure. *Grenier, supra* at 761-763.

Similarly, in *Hilton v. Atlas Roofing Corp. of Miss.*, 2006 WL 1581239 (E.D.La. 5/18/2006), the District Court considered allegations in a complaint where plaintiff "implicitly admitted" her claims for "breach of express and implied warranties, negligence, fraud, and unjust enrichment" were "excluded by her LPLA claim," but she was pleading them to preserve the rights of unnamed class members in common law jurisdictions. The Court observed plaintiff could not rely on the potential claims of unnamed parties to preserve causes of action that she could not maintain herself. Notably, the plaintiff's complaint alleged no LUTPA violations for the Court's review or consideration. *Hilton, supra* at 1-2.

Likewise, in *Brown v. R.J. Reynolds Tobacco Co.*, 852 F. Supp. 8 (E.D.La. 4/13/1994), the plaintiff specifically alleged the following four theories of recovery: (1) the defendants' tobacco products were unreasonably dangerous *per se*; (2) the defendant's manufacture and sale of cigarettes was an ultrahazardous activity; (3) the defendant's tobacco products were unreasonably dangerous because they contain design defects; and (4) the defendants practiced fraudulent misrepresentation, concealment and conspiracy. The plaintiff in *Brown* alleged no LUTPA violations. The District Court granted summary judgment, finding the LPLA did not authorize plaintiff's allegations based on: (1) the unreasonable *per se* claim; (2) the ultrahazardous activity claim; and (3) the claim for fraudulent misrepresentation, concealment and conspiracy claim. 852 F. Supp. at 9 - 11.

In *Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245 (5th Cir. 3/12/1997), a defendant filed a motion to dismiss pursuant to Rule 12(b)(6), asserting a plaintiff's complaints including negligence, fraud by misrepresentation, market share liability, breach of implied warranty of fitness, and civil conspiracy were not cognizable under the LPLA. The District Court, which concluded the claims for negligence, fraud by misrepresentation, market share liability, breach of implied warranty of fitness, and civil conspiracy were not cognizable under the LPLA was presented with no complaints of LUTPA violations for consideration. *Jefferson*, 106 F.3d at 1249-1251; *See also Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 262 (5th Cir. 2/13/2002) (there is no reason to read an intentional acts exception into the LPLA, as manufacturers are subject to suit under the Act for both intentional and unintentional acts).

Although the foregoing matters did not directly address LUTPA complaints within the context of LPLA complaints, this Court is inclined to agree with Fleet's argument that LUTPA complaints, nonetheless, are precluded by the clear statutory declaration found within the LPLA.

-15-

By way of analogy, one can argue the types of complaints which have routinely been found to be barred by the LPLA, should, also, encompass the LUTPA, and no basis for finding the LUTPA outside the reach of that declaration.

This Court further notes two cases specifically addressing Fleet, as defendant, and the issue at hand. Two District Courts have concluded that under quite similar LUTPA complaints couched against Fleet, along with claims under the LPLA, those LUTPA claims are not cognizable under the statutory declaration of exclusivity under the LPLA. In *Bracey v. C.B. Fleet Holding Co., Inc*, Judge Africk of the Eastern District granted Fleet's motion to dismiss a plaintiff's LUTPA claims under Rule 12(b)(6), noting a claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability not set forth in the LPLA. [E.D.La. Civil Action 06-3238, Doc.7]. Thereafter, plaintiffs in *Bracey* filed a "motion for reconsideration," which the Court denied, noting "the exclusivity of the LPLA is well-established in both the statute and its attendant case law." [E.D.La. Civil Action 06-3238, Doc. 16 (citing *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250-51 (5th Cir. 1997); *Hilton v. Atlas Roofing Corp.*, No. 05-4204, 2006 U.S. Dist. LEXIS 30284, at *6 (E.D. La. May 17, 2006) (Africk, J.); *Lacey v. Bayer Corp.*, No. 02-1007, 2002 U.S. Dist. LEXIS 9647, at *4 (E.D. La. 5/23/02) (Porteous, J.)].

Subsequently, in *Cantu v. C.B. Fleet Holding Co., Inc.,* Judge Minaldi of the Western District noted it is "well-settled that the LPLA does not permit a plaintiff to recover under any theories of liability, including negligence, fraud and misrepresentation." Judge Minaldi additionally noted, LUTPA is "penal in nature" and a cause of action for LUTPA violations would be "contrary to the fundamental principles of the LPLA," which does not authorize the recovery of punitive

damages. [W.D. La., Civil Action 06-2168, Doc. 10 (citing *Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245 (5th Cir. 3/12/1997); *Brown v. R.J. Reynolds Tobacco Co.*, 852 F. Supp. 8, 9 (E.D. La. 1994) aff'd 52 F.3d 524 (5th Cir. 1995); *Lacey v. Bayer Corp.*, No. 02-1007, 2002 U.S. Dist. LEXIS 9647, at *4 (E.D. La. May 23, 2002); *Grenier v. Medical Engineering Corp.*, 99 F. Supp.2d 759, 765-63 (W.D.La. 2000)].

A review of *Bracey* and *Cantu*, as well as those opinions previously discussed, reveals a common thread, the Court's attempt to address the policy considerations of the LPLA in consideration of other actions and allegations. Those same policy concerns would argue for this Court's upholding the clear language of the LPLA's exclusivity provision.

Plaintiffs argue, however, Fleet's motion to dismiss the LUTPA complaint should, nonetheless, be denied because of the underlying policy considerations of *LUTPA*, which is a "statutory enactment that is not based in tort or contract but is <u>penal</u> in nature." (Plaintiffs' Brief, p. 2) (emphasis in original). However, plaintiff's argument is not well placed, as under Louisiana law, "punitive or other 'penalty' damages are not allowable unless expressly authorized by statute." *Int'l Harvester Credit Corp. v. I.T. Seale*, 518 So.2d 1039, 1041 (La.1988). The LPLA, which specifically limits those claims which can be made against a manufacturer for use of its product by a consumer provides the exclusive theory of liability available against a manufacturer, and does not authorize punitive damages. *See* La.R.S. §§ 9:2800.51-9:2800.59 (2007). When the LPLA was enacted, the LUTPA long had been enacted and been operating; it is well settled, legislators are deemed to have been aware of the pre-existing statutes when enacting, and the legislature made no provision for punitive damages of any nature under the LPLA or an express exemption for the LUTPA. Plaintiffs have otherwise presented no statutory or jurisprudential authority nor argument

which this Court finds persuasive to abrogate the express statutory declaration of exclusivity under the LPLA.

In view of the foregoing, this Court finds plaintiffs' LUTPA allegations against Fleet are not cognizable under the facts presented, and thus, must be dismissed for the following reasons in particular: (1) the LPLA language is clear and unambiguous and provides the exclusive theory of liability against manufacturers; (2) the LPLA does not authorize the recovery of punitive damages; (3) the LPLA contains no exception for LUTPA claims; (4) the state jurisprudence contains no exception for the LUTPA; and (5) the jurisprudence addressing this issue, whether directly on point or by analogy, argue for such a finding.

### 3. Additional Theories of Recovery and the LPLA

Plaintiffs, however, aver their LUTPA claims may be brought under the LPLA on these facts because the LPLA does not "*per se* eliminate every cause of action which may be asserted," relying on the holding of *Lavergne v. America's Pizza Co.*, 838 So.2d 845 (La. App. 3 Cir. 2003). In *Lavergne*, a restaurant employee placed hot dipping sauce on a table near a child who managed to spill the sauce onto his lap, causing injuries. The child's parents brought: (1) an LPLA action against the restaurant company whose employee allegedly failed to warn the plaintiffs about the "product;" and (2) a negligence action against the restaurant whose employee allegedly placed the product too close to the child. 838 So.2d at 847. After the close of plaintiffs' evidence, the trial court granted American Pizza's request for involuntary dismissal of the LPLA claims, finding the plaintiffs failed to prove a cause of action under the LPLA. At the close of all evidence, the trial court found the restaurant's *employee* "breached her duty to protect the patrons from harm by placing the hot sauce within reach of the child," and the breach was a cause of the child's injuries. On appeal, the

restaurant argued the trial court should have dismissed all claims, arguing the exclusivity provisions of the LPLA. The court of appeal disagreed, finding the restaurant "wears two hats; one as the supposed manufacturer of the sauce, and another as an employer of a potentially negligent employee." The court explained the LPLA's "exclusivity provision" eliminates a general negligence cause of action for damages caused by a product, however, "it does not eliminate the liability of a manufacturer for damages caused by the negligent use of its product by one of its employees." *Id.* at 846-848.

This Court finds plaintiffs' reliance on *Lavergne* for the proposition that LUTPA claims may be brought under the LPLA is misplaced. While the defendant in *Lavergne* was in fact found liable under a theory of "negligence," the defendant's liability was not couched under its role as a "manufacturer" of a "defective product" under the LPLA, rather its liability was couched under its role as an employer for the negligent acts of its employee, independent of the nature of the product involved. Consequently, defendant's liability flowed not from its role as a "manufacturer" of a "defective product," rather from its role as an "employer" of a negligent employee, facts not at issue before this Court. Here, plaintiffs' petition unquestionably alleges Fleet's liability is couched as a *manufacturer* of a defective *product under the LPLA*. Likewise, plaintiffs clearly allege Fleet is liable for damages *under the LPLA*. Therefore, this Court finds *Lavergne* does not support plaintiffs' argument LUTPA claims may be brought under the LPLA in contravention to the clear declaration within the LPLA. This Court notes the conduct alleged by plaintiff for its claims under LUTPA is generally the same conduct alleged as its basis for its claims under the LPLA. Plaintiffs allege that "by means of the above described deceptive trade practices, Fleet has unlawfully acquired money from numerous Louisiana consumers, including petitioners," however, gives no basis for that

statement or argument to support its ability to bring such a claim in light of the LPLA.[6] In short, the factual and legal allegations plaintiffs make to support their claims under LUTPA are substantially the same as those made to support their claims under the LPLA, and as such, this Court cannot find their factual arguments persuasive.

In view of the foregoing, this Court concludes plaintiffs' LUTPA complaints are not cognizable on the facts presented because plaintiffs' complaints for damages against Fleet are subject to the statutory declaration of exclusive liability against a "manufacturer" set forth in the LPLA. Accordingly, this Court GRANTS Fleet's Motion to Dismiss Count III of plaintiffs' complaint.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 23 day of April, 2007.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiffs have advanced no argument nor facts establishing plaintiffs have standing to bring LUTPA claims on behalf of other Louisiana consumers. *See* La. R.S. § 51:1409(A) (an aggrieved individual may bring an action individually but not in a representative capacity to recover actual damages). However, this Court need not address that issue. Accepting as true allegations in plaintiffs' complaint and viewing them in the light most favorable to plaintiffs, it is noted plaintiffs allege Fleet "unlawfully acquired money from Louisiana consumers, including plaintiffs," which appears to allege plaintiffs suffered economic damages, which are authorized under the LPLA to the extent the Louisiana law of "redhibition" does not allow recovery for such damage or economic loss. La. R.S. 9:2800.53(5), thus, would not support plaintiffs' argument for exception.

-20-